UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINO ALPHONSO, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>REAL TIME RESOLUTIONS, INC., et al.,<br><br>  Defendants. | Case No. 23-cv-01488-JSC<br><br>**ORDER RE: MOTION TO DISMISS**<br>Re: Dkt. Nos. 16, 21 |

Plaintiffs brought consumer claims in state court against the loan servicer, beneficiary, and trustee of a deed of trust secured by Plaintiffs' home. Defendants removed to federal court. (Dkt. No. 1.)[1] The Court granted Plaintiffs' application for a temporary restraining order ("TRO") to enjoin the foreclosure sale of their home scheduled for April 19, 2023. (Dkt. No. 13.) Before the Court are Defendants Real Time Resolutions, Inc. and RRA CP Opportunity Trust 2's motion to dismiss, (Dkt. No. 16), and Defendant MTC Financial Inc. dba Trustee Corps's motion to join the motion to dismiss, which is unopposed, (Dkt. No. 21). Having carefully considered the briefing, and with the benefit of oral argument on June 1, 2023, the Court GRANTS the motion in part and DENIES it in part.

**COMPLAINT ALLEGATIONS**

On January 25, 2007, Plaintiffs executed a promissory note and closed end deed of trust in favor of GMAC Mortgage LLC, in the amount of $170,000. (Dkt. No. 1 at 12–13 ¶¶ 10–12.) The note was secured by their primary residence, 2735 Zinfandel Court, Antioch, CA 94531. (*See id.*

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

at 11 ¶ 1, 26–35.)[2] The deed of trust required monthly payments until February 2022, at which point all amounts owed would become due. (*Id.* at 26.)

In September 2018, Plaintiffs received a letter from Real Time Resolutions, Inc., stating they were servicing a delinquent mortgage. (*Id.* at 13 ¶ 15.) Plaintiffs contacted Real Time Resolutions, which refused to "validate" the loan. (*Id.* at 13 ¶ 16.) Also in September 2018, MTC Financial Inc. dba Trustee Corps recorded a notice of default against Plaintiffs' property. (*Id.* at 13 ¶ 18.) In May 2022, for the first time in 15 years, Plaintiffs received a statement from Real Time with an amount due of $393,509.46. (*Id.* at 12 ¶ 9, 15 ¶ 26.) "At no time prior to May 9, 2022, did Plaintiffs receive periodic statements. Plaintiffs, at all relevant times, were ready, willing, and able to make regular payments had Defendants simply sent periodic statements." (*Id.* at 12 ¶ 9.)

Plaintiffs bring claims for violation of 12 C.F.R. § 1026.41; breach of the implied covenant of good faith and fair dealing; violation of California's Unfair Competition Law ("UCL"); violation of Cal. Civ. Code § 2923.55; and violation of California's Rosenthal Fair Debt Collection Practices Act ("RFDCPA"). (*Id.* at 17–23 ¶¶ 41–77.) In June 2022, GMAC Mortgage assigned its interest to RRA CP Opportunity Trust 2. (*Id.* at 12–13 ¶¶ 12–14.) Thus, Plaintiffs sue Real Time Resolutions as the current loan servicer, RRA CP Opportunity Trust 2 as the current beneficiary, and MTC Financial as the trustee of the deed of trust. (*Id.* at 11 ¶¶ 3–6.)

**DISCUSSION**

**I.    Trustee Privilege**

MTC Financial moves to join the other Defendants' arguments for dismissal and also asserts Plaintiffs' claims against it are barred by the trustee privilege. (Dkt. No. 21.) Plaintiffs did not file an opposition to MTC Financial's motion.

The complaint alleges MTC Financial is trustee of the deed of trust. (Dkt. No. 1 at 13 ¶ 14; *id.* at 39.) "Under a deed of trust containing a power of sale, . . . the borrower, or 'trustor,' conveys nominal title to property to an intermediary, the 'trustee,' who holds that title as security

---

[2] The Court may take judicial notice of documents attached to the complaint. *Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).

for repayment of the loan to the lender, or 'beneficiary.'" *Kachlon v. Markowitz*, 168 Cal. App. 4th 316, 334 (2008).

> The trustee's duties are twofold: (1) to reconvey the deed of trust to the trustor upon satisfaction of the debt owed to the beneficiary, resulting in a release of the lien created by the deed of trust, or (2) to initiate nonjudicial foreclosure on the property upon the trustor's default, resulting in a sale of the property. . . . When the trustor defaults on the debt secured by the deed of trust, the beneficiary may declare a default and make a demand on the trustee to commence foreclosure. . . . The trustee in nonjudicial foreclosure is not a true trustee with fiduciary duties, but rather a common agent for the trustor and beneficiary. The scope and nature of the trustee's duties are exclusively defined by the deed of trust and the governing statutes.

*Id.* at 334–35 (cleaned up).

Cal. Civ. Code § 2924(d), related to nonjudicial foreclosure, provides that "[t]he mailing, publication, and delivery of notices" and "performance of the procedures set forth in this article" are privileged communications under Cal. Civ. Code § 47. "The Legislature's rationale for extending the litigation privilege in section 2924 to nonjudicial foreclosures was to protect trustees in the performance of their contractual and statutory duties." *Garretson v. Post*, 156 Cal. App. 4th 1508, 1518 (2007). Section 47 recognizes an absolute litigation privilege and a qualified privilege for communications made without malice. Cal. Civ. Code §§ 47(b), (c). But Section 2924(d) "fails to specify whether the intended [Section 47] privilege is absolute or qualified," "creat[ing] an ambiguity in the statute." *Kachlon*, 168 Cal. App. 4th at 335–36; *compare id.* at 338–41 (concluding Section 2924(d) grants the qualified privilege), *with Garretson*, 156 Cal. App. 4th at 1517–18 (concluding Section 2924(d) grants the absolute litigation privilege).

The Court need not resolve which privilege applies because MTC Financial's alleged activity was privileged under either formulation. The complaint's main allegations as to MTC Financial are that it recorded a notice of default in September 2018 and failed to communicate with Plaintiffs as required by law. (Dkt. No. 1 at 13–14 ¶¶ 18–23.) If the absolute litigation privilege applies, it covers recording the notice of default. *See, e.g.*, *Rodriguez v. JP Morgan Chase & Co.*, 809 F. Supp. 2d 1291, 1299 (S.D. Cal. 2011). If the qualified privilege applies, it covers the same activity unless it was undertaken with malice. *See, e.g.*, *Rockridge Tr. v. Wells Fargo, N.A.*, 985 F. Supp. 2d 1110, 1158–59 (N.D. Cal. 2013). There are no allegations plausibly

1 supporting an inference of actual malice, meaning "the publication was motivated by hatred or ill will towards the plaintiff or . . . the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights." *Kachlon*, 168 Cal. App. 4th at 336 (cleaned up).

Accordingly, Plaintiffs' claims against MTC Financial are barred by the trustee privilege. Defendants' motion is GRANTED as to all claims with respect to MTC Financial. The dismissal is with leave to amend because additional allegations might cure the defect. *See Yagman v. Garcetti*, 852 F.3d 859, 863 (9th Cir. 2017).

## II. Periodic Statements

Section 1026.41, a regulation implementing the federal Truth In Lending Act ("TILA"), requires a mortgage loan servicer to "provide the consumer" "a periodic statement" "for each billing cycle." 12 C.F.R. § 1026.41(a)(2). For damages suits, the TILA generally has a statute of limitations of "one year from the date of the occurrence of the violation." 15 U.S.C. § 1640(e).

"There is some debate on whether the period of limitations commences on the date the credit contract is executed, or at the time the plaintiff discovered, or should have discovered, the acts constituting the violation." *Meyer v. Ameriquest Mortg. Co.*, 342 F.3d 899, 902 (9th Cir. 2003) (citations omitted); *see King v. California*, 784 F.2d 910, 915 (9th Cir. 1986) (noting the limitations period "runs from the date of consummation of the transaction"). Even if the limitations period has run, "the doctrine of equitable tolling may, in the appropriate circumstances, suspend the limitations period until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King*, 784 F.2d at 915. Equitable tolling applies "where, despite all due diligence, the party invoking equitable tolling is unable to obtain vital information bearing on the existence of the claim." *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1045 (9th Cir. 2011). "A district court may dismiss a claim if the running of the statute is apparent on the face of the complaint," but "only if the assertions of the complaint, read with the required liberality, would not permit the plaintiff to prove that the statute was tolled." *Id.* (cleaned up).

Here, the acts constituting the Section 1026.41 violation were Defendants' failure to send

periodic statements. Plaintiffs allege periodic statements were required each month after January 2007, but no statement was sent until May 2022. (Dkt. No. 1 at 12 ¶ 9, 15 ¶ 26.) The deed of trust indicates all amounts owed would become due on February 1, 2022. (*Id.* at 26.) After that, the loan had no further "billing cycles" and therefore no periodic statements were required. 12 C.F.R. § 1026.41(a)(2). Thus, Defendants' latest violation of Section 1026.41 violation was in February 2022. Plaintiffs filed suit more than one year later, in March 2023. (Dkt. No. 1 at 2 ¶ 1.)

The complaint does not include allegations that, even if read liberally, would permit Plaintiffs to prove equitable tolling. They allege they did not receive statements, did not know how much was due, and did not know they were in default. But they do not allege they were unable to obtain vital information about Defendants' failure to send statements. *See Hubbard v. Fid. Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) ("Hubbard argues the statute of limitations should have been tolled until she discovered there were possible anomalies or errors in her loan. However, nothing prevented Hubbard from comparing the loan contract, Fidelity's initial disclosures, and TILA's statutory and regulatory requirements." (cleaned up)). The complaint indicates Plaintiffs knew the loan existed because they were ready to make payments, and received a letter from Real Time Resolutions about a delinquent mortgage. (Dkt. No. 1 at 12 ¶ 9, 13 ¶ 15.) Put differently, the May 2022 statement alerted Plaintiffs to the accumulated interest and default, but it did not alert them for the first time to Defendants' Section 1026.41 obligation to send periodic statements. *See Meyer*, 342 F.3d at 902 ("The failure to make the required disclosures occurred, if at all, at the time the loan documents were signed. The Meyers were in full possession of all information relevant to the discovery of a TiLA violation and a § 1640(a) damages claim on the day the loan papers were signed.").

Nor do the complaint allegations permit Plaintiffs to prove equitable estoppel, which "halts the statute of limitations when there is active conduct by a defendant, above and beyond the wrongdoing upon which the plaintiff's claim is filed, to prevent the plaintiff from suing in time." *Cervantes*, 656 F.3d at 1046 (cleaned up). The crux of this claim is that Plaintiffs did not know Defendants should have been sending periodic statements until they sent one. That is not active conduct above and beyond the Section 1026.41 violation.

5

Accordingly, neither equitable tolling nor equitable estoppel applies, and Plaintiffs' Section 1026.41 claim is time-barred on the face of the complaint. *See id.* at 1045. Defendants' motion is GRANTED as to this claim, with leave to amend. *See Yagman*, 852 F.3d at 863; *Cervantes*, 656 F.3d at 1046.

### III.  Implied Covenant of Good Faith & Fair Dealing

The covenant of good faith and fair dealing,

> implied by law in every contract, exists merely to prevent one contracting party from unfairly frustrating the other party's right to receive the benefits of the agreement actually made. The covenant thus cannot be endowed with an existence independent of its contractual underpinnings. It cannot impose substantive duties or limits on the contracting parties beyond those incorporated in the specific terms of their agreement.

*Guz v. Bechtel Nat. Inc.*, 24 Cal. 4th 317, 349–50, 8 P.3d 1089, 1110 (2000) (cleaned up). "The covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct that frustrates the other party's rights to the benefits of the agreement" even if it does not technically violate the express terms of the agreement. *Waller v. Truck Ins. Exch.*, 11 Cal.4th 1, 36 (1995). "A claim for breach of the implied covenant of good faith and fair dealing requires the same elements [as a claim for breach of contract], except that instead of showing that defendant breached a contractual duty, the plaintiff must show, in essence, that defendant deprived the plaintiff of a benefit conferred by the contract in violation of the parties' expectations at the time of contracting." *Levy v. JP Morgan Chase*, No. 10–01493, 2010 WL 4641033, at *3 (S.D. Cal. Nov. 5, 2010).

Plaintiffs' implied covenant theory is that Defendants hindered Plaintiffs' performance by failing to send periodic statements. They assert Defendants were obligated to do so by Section 1026.41, but that is not "a benefit conferred by the contract." *Id.* They also invoke paragraph 9 of the note, but because that is not alleged in or attached to the complaint, it does not plausibly entitle Plaintiffs to relief under an implied covenant theory. *Cf. Santana v. BSI Fin. Servs., Inc.*, 495 F. Supp. 3d 926, 945 (S.D. Cal. 2020) (denying motion to dismiss implied covenant claim based on the defendants' breach of a paragraph in the deed of trust, which required them to give notice of default before foreclosure). Accordingly, Plaintiffs fail to state a claim for relief under the implied

6

covenant of good faith and fair dealing. *See, e.g.*, *Patera v. Citibank, N.A.*, 79 F. Supp. 3d 1074, 1090 (N.D. Cal. 2015). Defendants' motion is GRANTED as to this claim, with leave to amend. *See Yagman*, 852 F.3d at 863.

### IV.     Unfair Competition Law

Plaintiffs' UCL claim uses the Section 1026.41 violation as a predicate under the "unlawful" and "unfair" prongs. (Dkt. No. 1 at 20 ¶ 58–60); *see Cel-Tech Commc'ns, Inc. v. L.A. Cellular Tel. Co.*, 973 P.2d 527, 539–40 (1999) ("By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the [UCL] makes independently actionable." (cleaned up)).

Section 1026.41 is the predicate for Plaintiffs' unlawful prong claim. Although the predicate claim is time-barred, the UCL's four-year statute of limitations applies to the UCL claim. *See Beaver v. Tarsadia Hotels*, 816 F.3d 1170, 1177 (9th Cir. 2016) ("[T]he UCL statute of limitations will apply to a UCL claim, even when that claim is based on an underlying law with its own separate statute of limitations."). Because the complaint alleges Section 1026.41 violations until February 2022, less than four years before the complaint was filed, Defendants have not established the unlawful prong claim is time-barred as a matter of law. Defendants' failure to send periodic statements also plausibly supports a claim for relief under the unfair prong. The complaint alleges that conduct is "tethered to" a specific regulatory provision, Section 1026.41. *Durell v. Sharp Healthcare*, 183 Cal. App. 4th 1350, 1365–66 (2010) ("[W]here a claim of an unfair act or practice is predicated on public policy, . . . the public policy which is a predicate to the action must be tethered to specific constitutional, statutory or regulatory provisions." (cleaned up)); *see Cel-Tech*, 20. Cal. 4th at 186–87 ("[T]o guide courts and the business community adequately and to promote consumer protection, we must require that any finding of unfairness to competitors under section 17200 be tethered to some legislatively declared policy or proof of some actual or threatened impact on competition.").

Plaintiffs' allegations plausibly support an inference they have statutory standing to pursue their UCL claim under either prong. They allege economic injury in the form of impending foreclosure and increased loan debt. *See Kwikset Corp. v. Superior Ct.*, 51 Cal. 4th 310, 323

(2011) (noting a plaintiff may show "economic injury from unfair competition" from "be[ing] required to enter into a transaction, costing money or property, that would otherwise have been unnecessary"); *Jenkins v. JPMorgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 521 (2013) (finding economic injury in the form of "impending foreclosure" and "diminishment of a future property interest"), *disapproved of on other grounds by Yvanova v. New Century Mortg. Corp.*, 62 Cal. 4th 919 (2016). And they plausibly allege that injury was caused by Defendants' failure to send periodic statements that would have alerted them to their debt before default. *Cf. Jenkins*, 216 Cal. App. 4th at 523 ("As Jenkins's home was subject to nonjudicial foreclosure because of Jenkins's default on her loan, which occurred *before* Defendants' alleged wrongful acts, Jenkins cannot assert the impending foreclosure of her home (i.e., her alleged economic injury) was caused by Defendants' wrongful actions." (emphasis added)).

Accordingly, Defendants' motion is DENIED as to this claim.

## V.     Contact Before Notice of Default

Cal. Civ. Code § 2923.55 requires a mortgage servicer to contact the borrower before recording a notice of default. However, the provision applies only to senior loans used to purchase a home, not junior loans secured by a home. Cal. Civ. Code § 2924.15(a); *see Sheen v. Wells Fargo Bank, N.A.*, 12 Cal. 5th 905, 921 (2022). The complaint indicates the loan is secured by Plaintiffs' home, and Plaintiffs do not contest this issue in their opposition to the motion to dismiss. Accordingly, Defendants' motion is GRANTED as to this claim, without leave to amend.

## VI.    Rosenthal Fair Debt Collection Practices Act

Like Section 1026.41, the RFDCPA has a one-year statute of limitations. *See* Cal. Civ. Code § 1788.30(f).

The complaint's allegations in support of this claim are minimal. (Dkt. No. 1 at 23 ¶¶ 76–77.) Plaintiffs' opposition asserts the claim is based on Defendants' refusal to validate the loan in 2018, more than one year before they filed suit. Plaintiffs' opposition also refers to conduct in November 2022, but the only conduct at that time alleged in the complaint is MTC Financial becoming trustee of the deed of trust. (*Id.* at 13 ¶ 14; *id.* at 39.) As such, Plaintiffs' RFDCPA claim is time-barred on the face of the complaint. *See Cervantes*, 656 F.3d at 1045. Defendants'

8

motion is GRANTED as to this claim, with leave to amend.  *See Yagman*, 852 F.3d at 863.

**CONCLUSION**

Defendants' motion is GRANTED in part and DENIED in part.  Plaintiffs' claims for violation of 12 C.F.R. § 1026.41; breach of the implied covenant of good faith and fair dealing; and violation of the RFDCPA are dismissed with leave to amend.  Their claim for violation of Cal. Civ. Code § 2923.55 is dismissed without leave to amend.  Their UCL claim is dismissed as to MTC Financial with leave to amend; it is not dismissed as to Real Time Resolutions and RRA CP Opportunity Trust 2.

Plaintiffs may file an amended complaint on or before **June 22, 2023**.

This Order disposes of Docket Nos. 16, 21.

**IT IS SO ORDERED.**

Dated: June 2, 2023

_____
JACQUELINE SCOTT CORLEY
United States District Judge